UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGORIA C. LETTS,

    *Plaintiff*,

v.                                                            CASE NO. 11-CV-14364

COMMISSIONER OF                              DISTRICT JUDGE BERNARD A. FRIEDMAN
SOCIAL SECURITY,                               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.  RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.  REPORT

    **A.  Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the court on cross-motions for summary judgment. (Docs. 10, 13.)

Plaintiff was 30 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 32.) Plaintiff's employment history includes work as an assistant store manager, certified nurse assistant, cleaner, child-care worker, janitorial service provider, and food preparer/cook. (Tr. at 185.) Plaintiff filed the instant claims on June 29, 2009, and July 17, 2009, alleging that she became unable to work on April 1, 2009, and February 1, 2009. (Tr. at 124, 133.) The claims were denied at the initial administrative stages. (Tr. at 56, 58.) In denying Plaintiff's claims, the Commissioner considered affective disorders and anxiety-related disorders as possible bases for disability. (*Id.*) On September 28, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Gregory M. Hamel, who considered the application for benefits *de novo*. (Tr. at 12-24; 29-55.) In a decision dated October 8, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision on October 6, 2009. (Tr. at 70-71.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 8, 2011, when, after review of additional exhibits[2] (Tr. at 237-39, 470-83), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-77.) On October 4, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

3

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI,

4

42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his]

5

past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since February 1, 2009, the alleged onset date. (Tr. at 17.) At step two, the ALJ found that Plaintiff's anxiety, obsessive compulsive disorder, bipolar disorder and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18-19.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a cleaner and a prep cook. (Tr. at 22.) Alternatively, at step five, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with the following nonexertional limitations: the claimant can perform only routine and repetitive tasks that do not require public contact or more than occasional contact with co-workers and she should avoid exposure to hazardous work environments. (Tr. at 19-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 22-23.)

### E.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has been treated at Community Mental Health for Central Michigan ("CMHCM") by Munawar Ahmad, M.D., for bipolar, anxiety, and obsessive-compulsive disorders since 2009. (Tr. at 257-93, 318-442, 467-69.)

6

On October 14, 2009, Dr. Ahmad noted that Plaintiff "did not present with any manic symptoms. Her speech was coherent. Affect was appropriate. She was anxious, and there was no pressure or flight of ideas. She was fairly focused in conversation." (Tr. at 258.)

On November 11, 2009, Dr. Ahmad noted that, "[g]iven this degree of compliance with medications, I told her that she is either not going to get much benefit from the medication, or the benefit will be minimal." (Tr. at 257.)

On April 1, 2010, Plaintiff "share[d] that while she is 'scared' she is also 'excited' about therapy ending as she wants to see how she does without it – that she thinks she is 'ready.'" (Tr. at 277.)

Plaintiff was also treated for a variety of minor medical issues such as sore throats, yeast infection, and shoulder pain. (Tr. at 248-56, 443-48, 449-58, 463-66.) On April 1, 2008, ultrasounds of Plaintiff's kidneys and urinary bladder were "[u]nremarkable." (Tr. at 443-44.) X-rays of Plaintiff's shoulder were "[n]egative" on August 17, 2009. (Tr. at 251.) Plaintiff was also treated for a bleeding disorder (causing easy bruising and significant bleeding after cesarean section and delivery) which was sometimes labeled Von Willebrand's disease but Plaintiff's "laboratory parameters were not consistent with" the disease. (Tr. at 263.)

A Mental RFC Assessment was completed on September 17, 2009, by Robert Newhouse, M.D., who concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, but was otherwise not significantly limited in understanding and memory. (Tr. at 244.) Plaintiff was found to be moderately limited in her ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods, but was found to be otherwise not significantly limited or not limited at all in sustained concentration and persistence. (Tr. at 244-45.) Plaintiff was found to be moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, but was otherwise not significantly limited in social interaction or adaptation. (Tr. at 245.) The assessment concluded that Plaintiff "may have trouble with complex detailed tasks and function best in small

7

familiar groups" and that she "retains ability to do simple tasks on [a] sustained basis." (Tr. at 246.)

A Psychiatric Review Technique completed by Dr. Newhouse on September 17, 2009, diagnosed Plaintiff with affective disorders and anxiety-related disorders, i.e., bipolar, depressed, and recurrent obsessions or compulsions as part of GAD. (Tr. at 304, 307, 309.) The assessment also concluded that Plaintiff was mildly restricted in activities of daily living, and moderately limited in maintaining social functioning and maintaining concentration, persistence or pace. (Tr. at 314.)

On July 12, 2010, Dr. Ahmad completed a Mental Impairment Questionnaire, assessed a GAF score of 45-50, and concluded that Plaintiff did not have reduced intellectual functioning, and that she "could work if not [a] stressful job situation." (Tr. at 299.) Dr. Ahmad also noted that "due to the stress of family issues, i.e., children or husband, this would interfere with working on a regular and sustained basis." (*Id.*) Dr. Ahmad's assessment paralleled that of the Mental RFC except that he also found Plaintiff was moderately limited in the ability to perform activities within a schedule and was between not significantly and moderately limited in the ability to sustain an ordinary routine without supervision and in the ability to set realistic goals and make plans independently of others. (Tr. at 301-02.) In addition, Dr. Ahmad found that Plaintiff was not significantly limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 302.)

In her Daily Function Report, Plaintiff indicated that she helps her husband with his daily hygiene, in addition to helping care for her children, and that she has no problems with her own personal care. (Tr. at 166.) Plaintiff stated that she prepares large meals three times a day for about one to two hours per meal but that she only eats one meal. (Tr. at 167.) She also stated that she does cooking, cleaning, laundry, grocery shopping, and lawn mowing "everyday/all day." (*Id.*) She added that she has difficulty finishing tasks and usually leaves "several tasks a day [] unfinished." (Tr. at 167-68.) Plaintiff is able to go to appointments and therapy when needed, drive a car, shop in stores and on-line for clothing and other things, and is able to manage money. (Tr.

8

at 168-69.) Plaintiff also uses the computer, plays computer games, plays cards with friends, talks on the phone, goes to friends' houses a couple times a year, and goes to appointments, but is "paranoid" other people will "hurt" her, causing her to be "always looking over [her] shoulder." (Tr. at 169-70.)

At the administrative hearing, Plaintiff testified that she has four children ranging in age from 8 to 12 years old, that her husband does not work because he is disabled, and that she spends most of her day cleaning. (Tr. at 34.) Plaintiff stated that she "clean[s] excessively, like, I pull my couch out, I'll clean behind my couch, I'll wash walls . . . I'm always cleaning. And then I try to do laundry or things like that during the day and I usually have maybe 5, 6 different projects . . . I got the vacuum out, I got the broom sitting out, the mop. So I'm never finishing one job. I'm always on to something else." (Tr. at 34.)

Plaintiff stated that she also takes her children to their doctor's appointments, e.g., her child's psychiatrist. (*Id.*) Plaintiff indicated that she only grocery shops once a month and then goes to the corner store for perishables. (Tr. at 34-35.) Plaintiff testified that she does not leave the Midland, Michigan, area, rarely goes beyond 15 miles from her home, does not go to the movies or mall, but does have one friend that she visits with on a regular basis. (Tr. at 36.) When asked what keeps her from working, Plaintiff responded, "I have a really hard time in public around people. I have a hard time getting along with my managers and bosses . . . [and] I have a hard time following their directions [because] I always want to do it my own way. It might be the same outcome, but I have to do it a different way." (Tr. at 36.) Plaintiff added that she has "a thing with going above and beyond my work and sometimes that gets me in trouble, where I'm not supposed to do other people's work and I do it just because." (*Id.*) In the remark section of her work report, Plaintiff stated that she "always fell short of what [her supervisors] want[ed]" and that she had "been discriminated against in a couple of these jobs and used at a few more." (Tr. at 208.)

Plaintiff further testified that she has "a hard time in public with the anxiety that I have, it – I'm always looking over my shoulder because my . . . ex-husband abused me so bad that I can't function every day without looking over my shoulder, . . . I'm always on a paranoid scale, . . .

9

[a]nd I found out my ex-husband gets out [of prison] in a year and a half and that's the biggest fear to me right now." (Tr. at 36-37.)

Plaintiff testified that she reads and uses a computer at home, she takes care of her personal hygiene and other needs, and that she smokes "maybe 7 [cigarettes] a day." (Tr. at 37.) Plaintiff explained that the cleaning business she started ultimately went out of business because she "made [a] really bad decision as the owner . . . [by] put[ting] a person in a supervisor position that probably I shouldn't have [a]nd I wasn't checking the accounts very well." (Tr. at 38-39.) "[S]o ultimately the cleaning wasn't getting done the way it should be and the guy called me and told me that they found someone else to do it and let us go[.]" (Tr. at 39-40.) When asked by her attorney why she left her most recent job with Kindercare, Plaintiff responded as follows:

> the boss that I had . . . she kept asking me, you know, you need to have this done and this done, you need to take this work home and get it done. And I told her, I'm not taking any work home that I'm not getting paid for. That's not in my job title. If you want me to come in early, I'll do my stuff in here. And then her and I just never got along because I kept going to her with the law and telling her that I know, by law, you cannot have the ratios you have right now. I cannot have 12 kids under my reign. And she ended up getting mad at me and I ended up leaving because by law I was required to turn her in.

(Tr. at 40.) Plaintiff indicated that probably "7 out of 30" days are "down" or "low" days where she does a lot of "laying down and crying, sleeping." (Tr. at 42.) Plaintiff also stated that because of her OCD she re-checks the locks on the house, and, if others help her, she rearranges the silverware drawer and refolds the laundry if it is not done the way she wants it to be done. (Tr. at 44.) She added that until it is done properly, she "can't stand it" and it causes her anxiety. (*Id.*) Plaintiff stated that her "main anxiety and stuff" comes from "being scared and worried about [her ex-husband] coming back." (Tr. at 45.) Plaintiff added that they only attend school functions that she knows her ex-husband's family will not be attending. (Tr. at 46.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background:

> who has no specific exertional descriptions, but should avoid hazardous environments, like working around dangerous moving machinery, for example. But also this hypothetical person is limited also to a performance of just routine and repetitive tasks that don't have a lot of steps, or if it does . . . have a lot of steps, it

10

would not be complicated or involved or hard to remember. And also, please assume someone who can[not] do tasks requiring public contact or more than occasional interactions with coworkers. And by this, I mean, the co-workers might be present, but the worker would not have to [interact] with them on more than an occasional basis.

(Tr. at 51-52.) The VE responded that such an individual could perform the jobs of cleaner and prep cook. (Tr. at 52.) If such a person were "off task about a third of the day" due to emotional symptoms, such a person would not be able to work. (*Id.*) When Plaintiff's attorney asked whether such a person could continue to work if she were to miss one day per week or four times a month due to depressive symptoms, the VE responded that such a person would not be able to work. (Tr. at 53.)

### F. Analysis and Conclusions
### 1. Legal Standards

The ALJ found that Plaintiff could perform her past relevant work as a cleaner and a prep cook. (Tr. at 22.)

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine

11

whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with the following nonexertional limitations: the claimant can perform only routine and repetitive tasks that do not require public contact or more than occasional contact with co-workers; and she should avoid exposure to hazardous work environments. (Tr. at 19-22.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ failed to perform a proper treating source evaluation when considering Dr. Ahmad's opinions. (Doc. 10 at 7-13.) Plaintiff contends that the ALJ must have been mistaken in assigning "great weight" to "Dr. Ahmad's opinion that the Plaintiff is not significantly limited in understanding, memory, sustained concentration and persistence, social interaction, and adaptation," because Dr. Ahmad's opinion did find "significant[]" limitations in the "specific areas" underneath these general categories. (Doc. 10 at 9.) In addition, Plaintiff argues that the decision "fails to assign weight to most of the opinions offered" by the Mental Impairment Questionnaire and the Mental RFC analysis. (Doc. 10 at 10.)

12

First, as to other source opinions besides treating physicians, although the ALJ may use such evidence that does not mean that the ALJ must accord any "significant" or other weight to the opinions nor is he required to give reasons why such opinions are discounted. *See* S.S.R. 06-03p; *Ball v. Astrue*, No. 09-208-DLB, 2010 WL 551136, at *5 (E.D. Ky. Feb. 9, 2010).

As to Dr. Ahmad's opinion, I suggest that the ALJ did give Dr. Ahmad's opinion great weight as evidenced by the hypothetical posed to the VE. Dr. Ahmad opined that Plaintiff did not have reduced intellectual functioning and that she "could work if not [a] stressful job situation." (Tr. at 299.) The ALJ's question to the VE required that the performance be "of just routine and repetitive tasks" that are "not [] complicated or involved or hard to remember" and that did not involve more than occasional contact with coworkers. (Tr. at 51-52.) Dr. Ahmad's assessment of subcategories of topics is consistent with the ALJ's findings and the RFC Assessment. (Tr. at 245-46.) Dr. Ahmad's assessment paralleled that of the Mental RFC except that he also found that Plaintiff was moderately limited in the ability to perform activities within a schedule and was between not significantly and moderately limited in the ability to sustain an ordinary routine without supervision and in the ability to set realistic goals and make plans independently of others. (Tr. at 301-02.) However, none of these additional findings are in conflict with the RFC made by the ALJ and posed to the VE. In addition, Dr. Ahmad's opinion actually finds Plaintiff to be less limited (i.e., not significantly limited) in her ability to accept instructions and respond appropriately to criticism from supervisors while the Mental RFC assessment found that she was moderately limited in this subcategory. (Tr. at 246, 302.) I therefore suggest that the ALJ's evaluation of treating sources was not in error and is supported by substantial evidence.

I further suggest that Plaintiff's modest treatment of counseling, therapy, and prescription medication, without any evidence of severe symptoms requiring in-patient treatment, is inconsistent with a finding of disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007).

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and

13

Plaintiff's own statements that she spends most of her day cleaning, driving, taking herself and her children to appointments, grocery shopping, visiting with friends, taking care of her personal needs, reading, using a computer, caring for her children and handicapped husband, preparing large meals three times a day for about one to two hours per meal, doing laundry, mowing the lawn, shopping in stores and on-line, managing money, playing computer games, playing cards with friends, talking on the phone, and going to friends' houses. (Tr. at 34-37, 166-70.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with

the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/ *Charles E Binder*
Dated: September 26, 2012                                 CHARLES E. BINDER
                                                            United States Magistrate Judge

**CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: September 26, 2012                               By      s/Patricia T. Morris
                                                                        Law Clerk to Magistrate Judge Binder